**Miguel RIVERA PUIG, Plaintiff,**

v.

**Hon. Gabriel GARCIA ROSARIO, Judge, District Court of Puerto Rico, Carolina Part., Defendant.**

**Civ. No. 92–1067(JAF).**

United States District Court, D. Puerto Rico.

Jan. 31, 1992.

Order Feb. 18, 1992.

Juan R. Marchand–Quintero, Rivera–Cestero & Marchand–Quintero, San Juan, P.R., for plaintiff.

Mirta Rodríguez–Mora, Kenneth Colón, Director, Federal Litigation Div., Jorge E. Pérez–Díaz, Secretary of Justice, Dept. of Justice, Com. of Puerto Rico, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff Miguel Rivera Puig, a reporter with *El Vocero de Puerto Rico* (*"El Vocero"*), a newspaper of general circulation within Puerto Rico, filed this action seeking that Puerto Rico Rule of Criminal Procedure 23(c) be declared unconstitutional based on the United States Supreme Court holding in *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*"Press–Enterprise II"*).[1] Plaintiff also seeks an injunction permanently barring defendant, the Honorable Gabriel Garcia Rosario, a district court judge of the Commonwealth of Puerto Rico, from applying the closure provision of Rule 23(c) in future preliminary hearings. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a)(3). Remedies are sought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and 42 U.S.C. § 1983.

A hearing was held on January 23, 1992, at which plaintiff and newspaper reporter Manny Suárez gave testimony.[2] The court also heard arguments by counsel. After allowing for the submission of additional documentary evidence, we now rule and *declare* that the closure provision of Rule 23(c) violates plaintiff and the public's qualified First Amendment right of access to preliminary hearings under the United States Constitution.

### I.

### *Facts and Procedural History*

After defendant submitted an amendment to his answer to the complaint,[3] the underlying facts giving rise to this action are not in dispute.

Plaintiff Rivera Puig has been a reporter with the newspaper *El Vocero* since 1979. Over the years he has been assigned the "court beat," covering judicial proceedings in both the local and federal courts. He testified that presently he is assigned to cover proceedings in federal court, but when newsworthy stories emerge in local court, he will also attend court proceedings in the Superior and District Courts of Puerto Rico.[4]

---

1. Rule 23(c) of Criminal Procedure, 34 L.P.R.A.App. II R. 23(c), is part of the regulation of criminal preliminary hearings for felony cases. Unless waived, the preliminary hearing must be held so that the court will determine whether probable cause exists that a crime has been committed and that the defendant committed it. The rule in its pertinent part provides as follows:

   The hearing shall be held privately, unless the defendant requests, at the commencement thereof, that it be public.
   *See* Appendix A for complete text of rule.

2. Manny Suárez is a senior reporter with *The San Juan Star*, an English-language newspaper that circulates in Puerto Rico.

3. Counsel for defendant alleges that a page of plaintiff's complaint was mistakenly omitted in the copy served upon him. In its place was substituted page 2 of plaintiff's motion for a preliminary injunction. After some discussion by counsel with the court, we granted the defendant the opportunity to file an amended answer, specifically to admit any additional facts that the court would deem denied. Defendant complied and admitted three additional allegations (¶¶ 4–6).

4. The judicial power in Puerto Rico is vested in a single unified court system consisting in the Supreme Court, the court of last resort, and the Court of First Instance. 4 L.P.R.A. § 1. The Court of First Instance consists of two divisions,

Plaintiff testified that many times during his tenure at *El Vocero,* he has sought and been denied admission to preliminary hearings in the local courts pursuant to Rule 23(c). He then testified as to the circumstances surrounding two such denials. The first documented denial occurred on April 4, 1991, when plaintiff sought admittance to the preliminary hearings being presided by defendant. On this occasion, plaintiff submitted a written request in which he identified himself as a newspaper reporter; sought access to the hearings; and, if access was denied, requested that the hearings be recorded and made available thereafter. (Plaintiff's Exhibit 1). The last paragraph of the written request states as follows:

> The undersigned understands that preliminary hearings should be open to the public and the press since this proceeding has a presumption of being public, in accord with the freedom of the press guaranteed by the First Amendment of the Constitution of the United States.

*Id.* (translation ours). At the bottom, defendant signed and dated the document denying plaintiff's request.

The second request for admittance to a preliminary hearing occurred on January 16, 1992. This time, when a court officer refused to allow plaintiff to be present for a preliminary hearing, Rivera Puig made a verbal request to the judge and again the judge denied it. In fact, defendant admits in his amended answer that the exclusion of plaintiff (and the public) from preliminary hearings is the consistent practice, and not the exception, in Puerto Rico courts.

A second reporter, Manny Suárez, of *The San Juan Star,* also testified that on January 22, 1992 he too was denied access to a review of a preliminary hearing determination held in the Superior Court of Puerto Rico, San Juan Part, pursuant to Rule 24(c) of the Puerto Rico Rules of Criminal Procedure, 34 L.P.R.A.App. II R. 24(c).[5] Suárez was in the court when defendant's attorney asked that the court be cleared. The judge, the Hon. Ygri Rivera de Martinez, complied with defense counsel's request. The reporter then represented to the court that he had a First Amendment right to be present at the proceeding. The judge nevertheless denied his request.

Plaintiff also testified that, along with being barred from preliminary hearings, no opportunity to subsequently review the proceedings was afforded him since no record is made, except in the case where a party brings his or her own recording equipment and tapes them. After discussion with counsel, this court took judicial notice under Fed.R.Evid. 201(b)(1)[6] that: (1) in the normal course, no record is made of preliminary hearings conducted in Puerto Rico courts; (2) the customary practice in the local courts is for the lawyers to bring their own recording equipment; (3) in the newly-constructed and larger judicial centers, taping equipment may be available for the high-profile cases; and (4) a large number of felony appeals to the Supreme Court of Puerto Rico are based on a stipulation of the facts by the parties, due to a lack of efficient court reporting.

---

the Superior Court and the District Court. 4 L.P.R.A. § 61. In the criminal area, while the Superior Court has jurisdiction over all felonies, 4 L.P.R.A. § 121(b)(1), district court judges preside over preliminary hearings. *See* 34 L.P.R.A.App. II R. 3 and 23. Review of preliminary hearing determinations is conducted by the Superior Court. 34 L.P.R.A.App. II R. 24.

**5.** Rule 24 governs a further proceeding which may be held after a preliminary hearing. Subdivision (c) allows the prosecuting attorney to resubmit the case, using the same or different evidence, to a magistrate of higher rank in the Court of First Instance where the magistrate in the Rule 23 preliminary hearing either found no probable cause or found probable cause for a lesser offense to the one charged. *See Pueblo v. Cruz Justiniano,* 116 D.P.R. 28 (Official Translations at 35) (1984); *Alvarez v. Tribunal Superior,* 102 D.P.R. 236 (Official Translations at 296) (1974). Procedures under Rule 24 are not appeals of the first magistrate's ruling but rather an independent hearing. *Cruz Justiniano,* 116 D.P.R. at 30 (Off.Trans. at 38).

**6.** Evidence Rule 201(b)(1) provides:
> (b) **Kinds of facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court.

Along with the testimony, the parties submitted certain documentary evidence. Plaintiff submitted copies of proposed legislation pending since September 1991 before the Puerto Rico Legislature, S. 1147, 11th Leg.Ass., 6th Sess. & H.R. 1407, 11th Leg.Ass., 6th Sess. (1991), which would amend the challenged section of Rule 23(c).[7] (Plaintiff's Exhibits 2 & 3). In the proposed amendments' *Exposition of Motives*, it is recognized that:

[A]lthough the preliminary hearing is not part of the trial, it is an important and essential element of the criminal process that also merits to be of a public nature. The reasons that justify that a trial be public, also justify that the preliminary hearing be public, particularly when on many occasions the process concludes after the hearing. These are: that the defendant may be assured the protection of a fair and impartial treatment, maintain the confidence in the judicial system through public scrutiny of the actions of Judges and prosecuting attorneys, and stimulate the participation of witnesses. Further, if such an important stage of the judicial process occurs behind closed doors, it could promote the belief that part of the process is not fair and impartial.

A preliminary hearing held in private ignores other rights that are worthy of protection: the access of the public and the press to obtain knowledge of judicial proceedings, that are qualifiedly guaranteed by the Constitution of the Commonwealth of Puerto Rico and by the First and Fourteenth Amendments to the Constitution of the United States.

*Id.* at 2. After outlining exceptions where this qualified right of access may give way to other rights—defendant's right to a fair trial, or another compelling interest—the proposed wording of the amendment to Rule 23(c) is offered.

The preliminary hearing shall be public unless the magistrate determines, after defendant's request, that a public hearing would entail a substantial probability of a violation of his constitutional right to a fair and impartial trial, and that there are no other reasonable and less far reaching alternatives short of a private hearing to eliminate such a probability. In such cases the decision of the magistrate shall be established in a precise and detailed manner.

Access to the preliminary hearing may also be limited when the magistrate determines, after a request in that regard, that the limitation is necessary to protect any other compelling interest and that no other reasonable and less far reaching alternatives are available. The decision of the magistrate shall be established in a precise and detailed manner.

*Id.* at 5. Article 2 makes the amendment effective immediately upon its enactment and applicable to any preliminary hearing held after that date. *Id.*

Also submitted by plaintiff was a portion of the May 1989 report of the Judicial Conference of Puerto Rico, which established that in the fiscal year 1986–1987 there were 27,988 preliminary hearings conducted in Puerto Rico and for the following fiscal year, 1987–1988, 28,796 hearings were held.

During the evidentiary hearing, this court was made aware of two recent local court actions involving this section of Rule 23(c), as well as a third case involving the right to public access at another Puerto Rico pretrial criminal proceeding. The first suit, *El Vocero de P.R. (Caribbean Int. News Corp.) v. Estado Libre Asociado de P.R.*, Civil Appeal AC–90–181, plaintiff's employer sought to have the closure provision of Rule 23(c) declared unconstitutional. This action is presently pending in the Supreme Court of Puerto Rico.[8]

---

**7.** The Bills themselves state the purpose of the amendment. "To amend paragraph (c) of Rule 23 of Criminal Procedure in order to establish that the preliminary hearing shall be public, and circumstances in which it may be private."

**8.** We note here that the appeal was filed on March 2, 1990 and has been submitted for resolution since February 1, 1991, when the Secretary of Justice filed a brief in opposition to plaintiffs' petition. Plaintiffs also moved for expedited resolution of this appeal on February 19, 1990 and renewed their request on January

In the second suit involving Rule 23(c), *Pueblo de Puerto Rico v. Lara Imbert,* Crim. No. FVP91-0034 (Sup.Ct.P.R., Carolina Part, March 19, 1991), Superior Court Judge Hiram Sánchez Martinez refused to close a preliminary hearing on appeal (Rule 24(c) hearing) after a Rule 23(c) request was made by defendant that the hearing be held in private. (Docket Document No. 10, *Exhibit 1*). The court based its denial to close the hearing on the public's right to be present at court proceedings as announced in *Press–Enterprise II*. After analyzing the United States Supreme Court's reasoning and holding in *Press–Enterprise II,* the court then noted that when Puerto Rico adopted the preliminary hearing provision from the California Penal Code in 1964, it did not adopt the latter's tradition that these hearings be public, but rather from the inception provided that these hearings would be held in private. *Id.* at 7, 106 S.Ct. at 2739. Judge Sánchez Martinez also confirmed the secret nature of the hearing and the fact that a record is normally not made.

> Different from other jurisdictions where the preliminary hearing is a hearing of record, In Puerto Rico the practice is that it is held in a small room or in the judge's office, without it being mechanically recorded or its events being perpetuated by shorthand or stenotyping. The witnesses are excluded from the hearing before and after testifying. The only persons present are the judge, the prosecuting attorney, the defense attorney and the defendant. With the exception of those officials, nobody knows what transpired at the hearing, since it is conducted, literally, "behind closed doors" and without a record.

*Id.* Judge Sánchez Martinez went on to describe the possible effects of the secret nature of the hearings. *Id.* at 8–9, 106 S.Ct. at 2740. First, public confidence can be undermined where, for example, no probable cause is found and the accused,

witnesses, victims, and their relatives are informed of the result with imprecise phrases such as "the judge said that there is no case" or "the judge dismissed your case," creating suspicion as to the basis for the dismissal. Further, Judge Sánchez Martinez recognized the crucial role played by preliminary hearings in the Puerto Rico penal process, since, at the hearing, the accused may raise defenses; testimony which may be used at trial is presented; and the accused, in limited circumstances, has the right to discover evidence. The court also pointed out that while Rule 23(c)'s closure provision gave defendant a statutory—rather than a constitutional—right to have a preliminary hearing held in private, this provision clashes with the First Amendment, and as such, is not immune from constitutional attack simply because it is promulgated by the Supreme Court under the latter's rule-making authority delegated to it by Art V. Sec. 6 of the Puerto Rico Constitution. *Id.* at 9–10, 106 S.Ct. at 2740–41.

Finally, the court found no significance in the fact that no member of the public had requested to be present in the courtroom and inferred that everyone present in the courtroom at the moment defendant requested closure of the proceedings sought to exercise their First Amendment right. *Id.* at 10–11, 106 S.Ct. at 2741–42. The court then fashioned a rule that preliminary hearings would be public except where the defendant requests that it be private at the commencement of the hearing and that he come forward with facts demonstrating that a public hearing would present a "real probability of substantial damage" to the defendant's right to a fair and impartial trial. *Id.* at 11, 106 S.Ct. at 2741–42.

Defendant sought review of the Superior Court decision and the Supreme Court of Puerto Rico reversed, finding that the Superior Court committed reversible error in

14, 1992. On January 17, 1992, José Purcell, a coplaintiff in the action, filed a mandamus action against the seven justices of the Supreme Court seeking resolution of the appeal. On January 22, 1992, the Supreme Court denied plaintiffs' earlier motions for expedited consideration of the appeal, dismissed the mandamus position, and noted that the court is giving the appeal the attention and evaluation it merits. *Purcell Ahmed v. Pons Núñez,* MD–92–2 (Jan. 22, 1992).

*sua sponte* deciding to allow the preliminary hearing to remain open over defendant's objection. *El Pueblo de Puerto Rico v. Lara Imbert,* CE–91–235 (June 28, 1991). The court noted that there was no justiciable dispute, thus rendering the lower court's decision violative of the "case and controversy" requirement imposed upon the Puerto Rico judiciary. In footnote 3, the appellate court also noted that neither party had challenged the constitutionality of Rule 23(c) and that a "real controversy" between "adverse parties" is a necessary prerequisite for a court to consider the constitutionality of a statute. *Id.* at 7.

In the third case, *El Vocero de Puerto Rico v. Hon. Carlos Cabán Garcia,* 92 J.T.S. 1 at 9121 (1992), plaintiff *El Vocero* is again challenging, on First Amendment grounds, the closure to the public of a probable cause to arrest hearing authorized under Rule 6 of the Puerto Rico Rules of Criminal Procedure, 34 L.P.R.A.App.II R. 6. As to this case, on January 15, 1992 the Supreme Court ruled that they did not have original jurisdiction over this action and ordered it transferred to the Superior Court for adjudication.

## II.

### Jurisdiction of this Court

At the evidentiary hearing and in his motion to dismiss, defendant has raised a number of issues relating to our jurisdiction over this action. We find this action is properly before us and, accordingly, will rule on the merits of plaintiff's claim.

### A. Sufficiency of Service of Process

■ At the beginning of the hearing, counsel raised the issue of whether plaintiff complied with this court's January 17, 1992 order by serving the Carolina District Court, the Secretary of Justice, and the Director of Courts Administration with the complaint and a copy of the order not later than January 21, 1992. At the commencement of the hearing the attorneys for the Secretary of Justice claimed that, while Judge Garcia Rosario had been properly served, the Secretary of Justice had not. Plaintiff responded by filing the affidavit of Ramón Figueroa–Colón, who declared that he had served: (1) the Secretary of Justice by serving a Ms. Rosado on the eleventh floor of the Justice Department building; (2) the director of the Courts Administration by serving a Ms. Melissa Concepción Dieppa; and (3) defendant. Defendant informed the court that a different person, Wilda Joy Nin, Esq., was the person designated by the Secretary of Justice to accept service of process. After the court heard argument by the parties, we ordered plaintiff to again serve the Secretary of Justice by serving attorney Joy Nin. We also stated that we would be willing to postpone the hearing until the next day so that service could be completed as directed by this court and to give defendant a chance to review and to respond to a corrected copy of plaintiff's complaint.[9] After a brief recess, one of the Justice Department attorneys, Mirta Rodriguez Mora, stated on the record that the Justice Department's attorneys did not need an adjournment and were ready to proceed. The defendant would waive the service of process issue, while reserving the right to amend his answer based on the allegations not yet considered by them.

Here, we simply note a recent United States Court of Appeals for the First Circuit case which restates the rule that "[p]ersonal jurisdiction is established either by proper service of process or by defendant's waiver of any defect in the service of process." *Precision Etchings and Findings, Inc. v. LGP Gem, Ltd.,* 953 F.2d 21, 23 (1st Cir.1992) (citations omitted). *See General Contracting & Trading Co. v. Interpole, Inc.,* 940 F.2d 20, 22–23 (1st Cir.1991); *Jardines Bacata, Ltd. v. Díaz–Márquez,* 878 F.2d 1555, 1559 (1st Cir. 1989). In the matter before us, we need not reach the issue of whether the Secretary's service was defective. By defense counsel's own statements, the Justice Department's continued participation in the hearing, and their failure to raise the defenses of lack of personal jurisdiction or

---

**9.** *See* footnote 3, *supra.*

insufficiency of service of process, they have waived any challenge to the court's acquiring personal jurisdiction over defendant.[10]

**B. Plaintiff's Standing To Sue**

■ In the motion to dismiss, defendant argues that plaintiff lacks standing to challenge the closure provision of Rule 23(c) and that this court, bound as it is by Article III of the Constitution, cannot hear the merits of plaintiff's claim.

It is hornbook law that a court can adjudicate a controversy only where a party has "standing". *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *United States v. One Parcel of Real Property*, 936 F.2d 632, 633 (1st Cir. 1991). To have standing, a party must

[s]how that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

*One Parcel*, 936 F.2d at 633 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations and quotations omitted)). *See County of Riverside v. McLaughlin*, — U.S. —, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991).

Under this standard, it is abundantly clear that plaintiff has standing to sue. Plaintiff has personally been prevented from exercising his own First Amendment right to be present at preliminary hearings and has, in his professional capacity, been inhibited from reporting on these proceedings. The challenged statute has been the basis for the denial of access by plaintiff. And finally, a favorable ruling by this court—declaring the statute unconstitutional—will most certainly redress plaintiff's injury since the Commonwealth courts will no longer be able to bar the public, including plaintiff, from Rule 23(c) hearings without complying with the constitutionally-mandated standards enunciated in *Press-Enterprise II*. Defendant's standing argument, therefore, must fail.

**C. Judicial Immunity**

■ Defendant also argues that since relief is sought from a Commonwealth court judge, the doctrine of judicial immunity bars granting prospective, injunctive relief. We disagree for two reasons. First of all, defendant's statement of the law is simply wrong. The Supreme Court of the United States has decided that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984); *In re Justices of Supreme Court*, 695 F.2d 17, 25–26 (1st Cir. 1982) ("[T]he district court correctly held that there is no such absolute immunity and that injunctions can be issued against judges in an appropriate case."). [11]

Second, it is clear that the gravamen of plaintiff's claim is an attack on the constitutionality of the Rule 23(c) closure provision. In that sense, Judge García Rosario is a nominal defendant. Like in *In re Justices*, 695 F.2d at 20–21, plaintiff's attack here is on the prospective application of the statute. No other relief is being requested. The judge is being represented by the Secretary of Justice, the proper party to defend the constitutionality of the Puerto Rico statute. We also presume that Judge García Rosario, as indeed all Puerto Rico magistrates, "will comply with a declaration of a statute's unconstitutionality without further compulsion." *Id.* at 23. We rule, therefore, that while Judge García Rosario remains a nominal defendant, we see very little need for him personally to further participate in or bear the burden of the present litigation. Therefore, we find that the doctrine of judicial immunity does

---

**10.** The motion to dismiss and the answer (original and amended) fail to raise the defense. In the original answer, the Secretary of Justice's appearance is not qualified. *See* Fed.R.Civ.P. 12(b)(2)(5).

**11.** Because of our disposition of this case, we make no finding as to whether this case is an appropriate vehicle for the issuance of injunctive relief against defendant.

not bar our adjudication of the merits of plaintiff's claim.

### D. Exhaustion

■ As another basis for dismissal, defendant argued that plaintiff has not exhausted state judicial remedies. As a corollary to this argument, defendant also seeks to categorize plaintiff as nothing more than an agent of his employer, *El Vocero*, and argued that the federal suit is, in reality, plaintiff's attempt to litigate the same action, by the same parties, dealing with the same issue, in two judicial forums. We disagree.

First, defendant again misstates the applicable law. Plaintiff brings his suit pursuant to 42 U.S.C. § 1983. Where a party brings suit under section 1983, there is no requirement that state court remedies be exhausted prior to bringing a federal action. *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961); *Cuesnongle v. Ramos*, 835 F.2d 1486, 1499 (1st Cir.1987). Second, the fact that plaintiff is employed by a newspaper which has challenged the same statutory provision in local court certainly does not diminish *plaintiff's* right to vindicate *his* federal constitutional rights, nor require him to defer in pursuing his claim until after the local court has rendered a decision.

### E. Abstention

■ Defendant also argues that this court should abstain based on the doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See also Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). The rule announced in *Younger* is that, absent special circumstances, a federal court must abstain from staying or enjoining pending state criminal prosecutions. Here, despite parties' references to the Jarabo and Meliá hearings, there is no pending criminal proceeding to be enjoined. Unlike "the paradigm situation calling for *Younger* restraint, [where] the state defendant brings a federal action challenging the statute under which he is simultaneously being prosecuted," *Fernández v. Trías Monge*, 586 F.2d 848, 851 (1st Cir.1978), in the case before us plaintiff is challenging the facial

validity of Rule 23(c). The relief requested is that access be granted to future preliminary hearings. Therefore, we think abstention under *Younger* is not warranted in the present action.

We also note that in a Supreme Court case decided subsequent to *Younger*, the Court held

> [t]hat regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.

*Steffel v. Thompson*, 415 U.S. 452, 475, 94 S.Ct. 1209, 1223–24, 39 L.Ed.2d 505 (1974). Like the matter before us, plaintiff's claim in *Steffel* was that a state criminal statute violated his First and Fourteenth Amendment rights by prohibiting the distribution of handbills in a shopping center parking lot. Citing *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972), the Court in *Steffel*, 415 U.S. at 462, 94 S.Ct. at 1217, recognized "that the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.'" The Court then opined:

> When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected

activity to avoid becoming enmeshed in a criminal proceeding.

*Id. See also Playboy Enterprises, Inc. v. Public Service Com.*, 906 F.2d 25, 31 (1st Cir.) (citation omitted) (noting "the willingness of federal courts, including the Supreme Court, to entertain declaratory and injunctive actions against prospective enforcement of state law which threatens to discourage expression"), *cert. denied,* — U.S. —, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990).

We think that the above-cited passage in *Steffel* applies to plaintiff's situation here. Plaintiff seeks declaratory relief in challenging a Puerto Rico statute which he claims infringes on his First Amendment right of access. Plaintiff would most likely have no standing to intervene in local criminal prosecutions to challenge the rule; nor should he be forced to either "flout" state law, for example, by demanding access to preliminary hearings and refusing to leave the court when ordered to do so, in order to test the constitutionality of the statute or be forced to forego what he believes to be protected activity. Under such circumstances, we find that this court need not abstain and may rule on the merits.

■ Although not raised by the parties, we think that there is one more issue relating to abstention. Defendant has brought to our attention the fact that there are parallel state court proceedings pending relating to the constitutionality of the Rule 23(c) closure law. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court "established a doctrine governing the stay or dismissal of federal lawsuits in circumstances in which the three traditional categories of abstention were inapplicable." *See also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 11 (1st Cir. 1990) ("*Villa Marina I*"). In *Colorado River*, the Court held that in "exceptional circumstances", a federal court could decline to exercise jurisdiction based on " 'considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive dispo-

sition of litigation," ' " *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 14–15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952))); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 532 (1st Cir.1991) ("*Villa Marina II*"). The Court in *Colorado River* emphasized the narrowness of this rule, given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 817, 96 S.Ct. at 1246.

In *Villa Marina II*, the First Circuit summarized the illustrative factors set out in *Colorado River* and *Moses H. Cone* which courts should use to determine whether "exceptional circumstances" exist:

(1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction.... (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Another factor considered by some courts is the vexatious or reactive nature of the federal lawsuit.

947 F.2d at 532. In weighing the factors, the court must give "weight to the heavy presumption favoring the exercise of jurisdiction." *Villa Marina I*, 915 F.2d at 13. Here, applying these factors to the matter before us, we find that exceptional circumstances do not exist and decline to dismiss or stay the action.

The first two factors do not favor one forum over the other, since no *res* is involved and the two forums are equally convenient. Because of the nature of the action—determining the constitutionality of a state statute—we do not think that there is some "exceptional basis for requiring the case to proceed entirely in the Commonwealth court." *Villa Marina I*, 915 F.2d at 16. In fact, once the constitutionality of the statute is determined, litigation should end. As to the next factor, the order of

litigation, while defendant could argue that because plaintiff's employer has had a suit pending in local court for years, this factor would favor dismissal; however, it is plaintiff, and not his employer, who has brought this action.[12] Here, it is clear that federal law controls. Finally, we find no basis for considering plaintiff's federal action vexatious or reactive. Plaintiff's own testimony confirms the fact that he had decided to choose a federal forum to vindicate his claim.

We, therefore, find that no exceptional circumstances exist and will not dismiss or stay the action on *Colorado River* grounds.

Having reviewed defendant's jurisdictional arguments, we now turn to the merits of plaintiff's claim.

### III.

*Discussion*

The public's right of access to judicial proceedings was first recognized in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In *Richmond Newspapers*, seven of the Justices agreed that the First Amendment, applicable to the states through the Fourteenth Amendment, guaranteed some sort of public access to criminal trials. In his plurality opinion, Chief Justice Burger found that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." 448 U.S. at 581, 100 S.Ct. at 2829–30.

The Court continued to refine its analysis of this public right of access in *Globe Newspaper Company v. Superior Court for County of Norfolk*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). Here the Court gleaned from the various opinions in *Richmond Newspapers* two features of the criminal justice system that explained why the First Amendment afforded protection

for a right of access to criminal trials. 457 U.S. at 605–06, 102 S.Ct. at 2619–20. The Court first noted that "the criminal trial historically has been open to the press and general public." *Id.* at 605, 102 S.Ct. at 2619. Second, the Court found that "the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole" in that public scrutiny: (1) "enhances the quality" and "safeguards the integrity" of the factfinding process; (2) "fosters an appearance of fairness, thereby heightening public respect for the judicial process;" and (3) "permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Id.* at 606, 102 S.Ct. at 2619–20. The Court in *Globe Newspaper* went on to set forth the circumstances under which a state could bar the press and public from a criminal trial.

> Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.

*Id.* at 606–07, 102 S.Ct. at 2619–20. Applying this standard, the Court found that the Massachusetts statute, as interpreted by the state Supreme Court, violated the First Amendment to the Constitution. *Id.* at 610–11, 102 S.Ct. at 2622.[13]

In *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("*Press–Enterprise I*"), the Court found that this First Amendment qualified right of access to criminal proceedings extended to *voir dire* examination of potential jurors. Again the Court looked to the history of the criminal trial to find that "since the development of trial by jury, the process of

---

**12.** In fact, we think that this factor alone requires this court's adjudication of plaintiff's claim on the merits, since it could also be said that there is *no* parallel litigation in the Commonwealth courts.

**13.** In a footnote, the Court emphasized that its holding was a narrow one finding "constitution-

ally infirm" a mandatory closure rule, "requiring no particularized determinations in individual cases," with respect to the testimony of minor sex victims. *Id.* at 611 n. 27, 102 S.Ct. at 2622 n. 27.

selection of jurors has presumptively been a public process with exceptions only for good cause shown." *Id.* at 505, 104 S.Ct. at 821. The Court, in highlighting the importance of the value of openness, again cited the *Richmond Newspapers* standard where the state attempts to deny access. *Id.* at 509–10, 104 S.Ct. at 823–24. The Court went on to find:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id.* at 510, 104 S.Ct. at 824. Applying these standards to the facts of the case, the Court found that the trial court failed both "to articulate findings with the requisite specificity" and "to consider alternatives to closure and to total suppression of the transcript." *Id.* at 513, 104 S.Ct. at 825.

Finally, in *Press–Enterprise II, supra,* the Supreme Court extended its public right of access analysis to preliminary hearings in criminal prosecutions conducted in California, even where the trial judge, the prosecutor and the defendant all objected based on their feeling that pre-trial publicity would jeopardize defendant's right to a fair trial. The Court first rejected the California Supreme Court's attempt to avoid the First Amendment issue by distinguishing between a preliminary hearing and a criminal trial. 478 U.S. at 7, 106 S.Ct. at 2740 ("[T]he First Amendment question cannot be resolved solely on the label we give the event, *i.e.,* 'trial' or otherwise, particularly where the preliminary hearing functions much like a full-scale trial."). The Court then reviewed its reasoning in *Richmond Newspapers, Globe Newspaper,* and *Press–Enterprise I,* and found that "[i]f the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." *Id.* 478 U.S. at 9, 106 S.Ct. at 2740. The Court analyzed both the historical experience of preliminary hearings and whether public

access "play[ed] a particularly significant role in the functioning of the process," and concluded that there had been a tradition of public access to the type of preliminary hearings conducted in California and that, because of its extensive scope, the preliminary hearing "is often the final and most important step in the criminal proceeding." *Id.* at 10–12, 106 S.Ct. at 2741–42. As such, the Court found that a qualified right of access attached to preliminary hearings as they are conducted in California. *Id.* at 10, 106 S.Ct. at 2741. The Court went on to apply the standard enunciated in *Press–Enterprise I* and found that the California standard for determining whether a hearing should be closed—closure upon a finding of "reasonable likelihood of substantial prejudice"—failed to consider the First Amendment right of access. Also, the Court found that the California court failed to consider alternatives to closure. The Supreme Court, therefore, reversed the California Supreme Court so that the latter could apply the "substantial probability" test which is called for by the First Amendment. *Id.* at 14–15, 106 S.Ct. at 2743–44.

Applying the Supreme Court's right of public access analysis to the closure provision of Rule 23(c), we find that it violates the First and Fourteenth Amendments to the Constitution.

■ First of all, the preliminary hearing in Puerto Rico has many of the same characteristics as those conducted in California. The hearings are held before a detached neutral magistrate; both prosecutor and defense counsel are present; evidence may be presented by both sides, including exculpatory evidence by the accused; witnesses are heard and can be cross-examined; and based on the evidence, the magistrate will either hold the accused over for trial or exonerate and set him or her free. It is clear that the magistrate is performing an adjudicative function in the preliminary hearing and, like California, this hearing may be the only formal judicial proceeding, both in the cases where the accused pleads guilty and in those cases where no probable cause is found.

■ We find, therefore, that the First Amendment qualified public right of access attaches to these hearings as they are conducted in Puerto Rico. We next examine whether the closure provision found in Rule 23(c) meets the constitutional standard enunciated by the Supreme Court. It is clear that the present provision does not. Rather than creating a presumption that the hearing is public, the Puerto Rico rule creates the reverse presumption, that the hearing is to be closed and the public will be allowed access only where the defendant requests it. There is no requirement that the judge make individualized determinations; nor does the magistrate consider less restrictive, narrowly tailored alternatives to closure. Moreover, no decision by the Supreme Court of Puerto Rico has been brought to our attention where a state constitutional or statutory right of the public to attend such hearings has been found, thus interpreting the provision in a way that it meets the constitutional minimum.[14]

In fact, the closure provision of Rule 23(c) is more restrictive than even the earlier laws which allowed hearings to be closed "at defendant's request." *See Gannett Co., v. De Pasquale,* 443 U.S. 368, 390, 99 S.Ct. 2898, 2911, 61 L.Ed.2d 608 (1979). Under the Puerto Rico rule, as plaintiff testified and defendant conceded, the norm is that preliminary hearings are private and only in exceptional cases does the defendant allow the public access. Under these circumstances, the "secret air" of these proceedings becomes all the more pronounced. As Judge Sánchez Martinez recognized, victims, family members, and other concerned citizens can become suspicious when they are privy to only the decision of the magistrate and have no opportunity either during or after the proceedings to ascertain what transpired. Rather than promoting confidence in the judiciary, this type of closure provision can lead to the sense that justice is a private act administered in secret, rather than a public proceeding administered by public officials.

■ Also, the fact that no record is made of the preliminary hearing exacerbates the situation. Not only is the public excluded from the hearing itself, but, in the majority of cases, there is no way to subsequently determine what transpired in the hearing. Along with no information about the specific case, the public has no way of knowing if the judicial system and its officers are operating within the constitutional framework entrusted to it.

Finally, we need not tarry long with defendant's argument that *Press–Enterprise II* stands for the proposition that only a *transcript,* and not access to the hearing itself, is constitutionally mandated. First of all, as a practical matter, we find that transcripts usually are not available. More importantly, the Supreme Court cases discussed above emphasize that the judicial proceedings are *public* gatherings, where the *polis* can gather to observe and participate in the process of self-government. To relegate the public to reading about judicial proceedings, rather than allowing them to be present and to see and hear first-hand the judicial system at work, simply does not comport with the First Amendment's guarantee that citizens should be informed about and participate in the ongoing evaluation and development of society through the working of its government.

## IV.

### Conclusion

For the reasons stated above, we *declare* that the closure provision of Rule 23(c) of the Puerto Rico Rules of Criminal Procedure violates the First and Fourteenth Amendments to the United States Constitution and that, therefore, the rule is *unconstitutional.* Since we are sure that the Puerto Rico judiciary will comply with this declaration without further compulsion, no injunctive relief will be ordered at this time. Of course, this decision allows local courts to bar the public from preliminary

---

**14.** In *Press–Enterprise II,* 478 U.S. at 11 n. 4, 106 S.Ct. at 2742 n. 4, the Supreme Court cited a number of states which have closure provisions based on the Field Code, published in 1850, but in all of these states, court interpretation has found a right to access that meets the constitutional minimum.

hearings or hearings to determine probable cause for arrest or prosecution if the *Press–Enterprise II* balancing is made and written findings are entered as required by said Supreme Court decision. By the same token, the Puerto Rico Legislature or the Supreme Court of Puerto Rico, through its rule-making power, may establish a new rule, as long as the constitutional precedent is respected.

IT IS SO ORDERED.

## APPENDIX A TO OPINION & ORDER OF 1/31/92.

### RULE 23. PRELIMINARY HEARING

(a) **When it shall be held.** A preliminary hearing shall be held in all cases in which a person is charged with the commission of a felony and the magistrate who made the initial determination of probable cause to believe that the person has committed the offense charged had not examined any witness with personal knowledge of the facts, or when the defendant was not present in the determination of probable cause, or when present, he did not have counsel. In those cases he shall be summoned for that hearing at least five (5) days before it is held. In the cases in which it appears according to Rule 22(c) that the person cannot obtain assistance of counsel, the corresponding magistrate shall assign counsel to defend him, and his name shall be set forth in the summons for the preliminary hearing. The magistrate shall communicate said appointment to counsel.

(b) **Waiver.** After a person has been summoned, he may waive his right to a preliminary hearing by a written statement signed by him and submitted to the magistrate before the commencement of the hearing or personally at any moment during the celebration thereof. If the person waives preliminary hearing or does not appear thereat after having been duly summoned, the magistrate shall forthwith hold him to answer for the commission of an offense before the appropriate part of the Superior Court.

(c) **Proceeding during the hearing.** If the person appears at the preliminary hear-

ing and does not waive it, the magistrate shall hear the evidence. The hearing shall be held privately, unless the defendant requests at the commencement thereof that it be public. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. The prosecuting attorney may be present at the hearing and he may also examine and cross-examine all witnesses and introduce new evidence. Upon being requested to do so, the prosecuting attorney shall put at the disposal of the person the sworn statements of the witnesses whom he called to testify at the hearing that he has in his possession. If in the opinion of the magistrate the evidence shows that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall forthwith hold him to answer for the commission of the offense in the appropriate Part and Division of the Court of First Instance; otherwise the magistrate shall exonerate him and order that he be set free. The magistrate shall set the defendant free on the bail furnished, or the same conditions, or both, that were imposed by a magistrate when the arrest was made, or alter them, or impose bail or conditions pursuant to Rule 218(c) if it had not imposed it, and if in the opinion of the magistrate it were necessary. Notwithstanding the above, the magistrate shall not alter the bond fixed or condition imposed by a magistrate of a higher category unless probable cause for a lesser offense than what the person was originally charged with is determined in the preliminary hearing. After concluding the proceeding before him, the magistrate shall transmit forthwith to the clerk of the appropriate Part and Division of the Court of First Instance all papers in the proceeding and any bail taken by him. The record shall show the date and place of the preliminary hearing, the persons appearing and the magistrate's decision.

### ORDER

After considering plaintiff's urgent motion pursuant to Fed.R.Civ.P. 52(b) and for injunctive relief, filed on February 12, 1992, we make the following observations

292

and provide accordingly. First, this matter presented a justiciable issue before this court. The rule in question had in fact been invoked by the defendant against the plaintiff. The threat of subsequent invocation was not hypothetical, but instead very real. Great and immediate irreparable first amendment injury to the federal plaintiff accrues day by day. Without doubt, local rule 23(c)'s closure provision flagrantly and patently violates express constitutional precedent by the Supreme Court of the United States. *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). The wording of the closure provision is at odds with the First Amendment precedents cited in our main Opinion and Order in every word and in whatever manner and against whomever an effort might be made to apply it. *Moore v. Sims*, 442 U.S. 415, 424, 99 S.Ct. 2371, 2377–78, 60 L.Ed.2d 994 (1979). Therefore, the issuance of declaratory relief was proper. *See Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

Second, we address plaintiff's implicit contention that the Puerto Rico judiciary would look only to the Commonwealth Supreme Court for final adjudication of this matter.[1] This is not a fair appreciation of what is expected of the Puerto Rico judiciary, a traditionally responsible institution. Our decision, that of a federal court dealing with a federal constitutional problem, was properly emitted, even though the issue, presented by other parties, has been pending for almost two years before the Puerto Rico Supreme Court and has been ripe for adjudication for more than one year.[2] Principles of federalism govern the federal court, as well as the Puerto Rico judiciary.[3] So long as those principles are adhered to, our decisions have a binding effect on Commonwealth tribunals.

Third, we emphasize that the declaratory judgment remedy is one inherently sensitive to principles of equity, comity, and federalism. It is a responsible alternative

1. The affidavit in support of the request for injunctive relief refers to an article appearing in *The San Juan Star* on February 12, 1992, where supposedly the Chief Justice of the Puerto Rico Supreme Court said he would not direct local judges to follow this court's ruling that preliminary hearings in criminal cases must be opened to the press and public. *See* article by Robert Friedman, Addendum A to this Order. We do not express a view on this newspaper report and only mention the same as the basis for plaintiff's contention in paragraph 4 of its motion, where it is stated as follows:

4. Furthermore, it is foreseeable that the expressions by Justice Andreu quoted in The San Juan Star will have the probable effect of interfering with plaintiff's First Amendment qualified right of access to preliminary hearings. His expressions, as head of the Commonwealth judiciary, will certainly carry great weight with other judges who would perhaps otherwise abide this Court's declaratory judgment.

2. A federal court may not grant declaratory or injunctive relief to a federal litigant who is also involved in a state court proceeding where the federal constitutional issue may be raised. However, this principle, first elicited in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is not applicable to the instant situation, since plaintiff Miguel Rivera–Puig is not a party in the pending state matter. Therefore, we once again hold that abstention was not warranted.

It is also irrelevant that Rivera–Puig may well have benefitted from a favorable decision by the Puerto Rico Supreme Court. The *Younger* principles of comity require a particular litigant to choose its forum. *Moore v. Sims*, 442 U.S. 415, 425, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979). It also bears noticing that, obviously, at this stage, Rivera–Puig could not become a party to the state suit.

3. Article III of the United States Constitution provides in its pertinent part:

Section 1. The judicial power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish....

Section 2. [1] The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States,....

In turn, Article VI of the Constitution, the Supremacy Clause, provides in its pertinent part as follows:

[2] This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

to the strong remedy of injunction. The persuasive force of this court's opinion and judgment should lead the Puerto Rico judiciary and the Puerto Rico Legislature to consider their respective responsibilities toward the closure provision of Rule 23(c). It is clear that the declaratory judgment, while not ultimately coercive, has the force and effect of a final judgment with *res judicata* implications. Noncompliance is inappropriate but, nevertheless, is not contempt. *Pérez v. Ledesma*, 401 U.S. 82, 124–26, 91 S.Ct. 674, 696–97, 27 L.Ed.2d 701 (separate opinion of Justice Brennan); *Steffel v. Thompson*, 415 U.S. at 469–71, 94 S.Ct. at 1220–22; 28 U.S.C. §§ 2201–2202.

Lastly, we note that under the appropriate circumstances, declaratory judgment may necessarily and properly give rise to injunctive relief in order to effectuate the remedy. 28 U.S.C. §§ 2201–2202. Nevertheless, although this court may issue an injunction against the named defendant and ultimately against all judicial officials who seek to enforce an unconstitutional provision, 28 U.S.C. § 2202, we will not entertain such a remedy at this time. We believe that the previously mentioned principles of comity and federalism dictate that declaratory relief provides the proper equilibrium under the circumstances. It carries the moral force of an injunction without subjecting violators to further imposition and indignity. At the same time, the other federal and local institutions may properly evaluate the provision in question. The United States Court of Appeals for the First Circuit will review our determination, the Commonwealth Supreme Court may well determine that the matter before it is moot, and the Puerto Rico Legislature now has the opportunity to fashion a constitutional procedure.

In sum, declaratory relief was proper and we are sure it will be respected by the local judiciary. Such respect will allow review and evaluation through all appropriate channels. On the other hand, failure to comply would unnecessarily and tragically undermine the delicate balance between federal and local entities, and would ultimately embarrass those who would ignore the historically proven equilibrium. Because of our faith in all of the institutions involved, the motion for injunctive relief to effectuate this court's judgment is now *denied without prejudice.* [4] A courtesy copy of the main Opinion and Order and of this disposition will be made available to the local judges mentioned in plaintiff's affidavit in support of injunctive relief, Hon. Magdalena Caratini and Hon. Carlos J. Rivera Davis, District Judges, District Court of Puerto Rico, Carolina Part.

IT IS SO ORDERED.

---

**4.** We need not reach the merits of the opposition to plaintiff's motion under Fed.R.Civ.P. 52(b). Plaintiff's motion was timely filed and in that sense the notice of appeal does not deprive this court of jurisdiction to enter this determination. In the context of today's ruling, there is no need to consider a stay pending appeal. We have not enjoined and, therefore, there is nothing to stay.

ADDENDUM "A"
TO ORDER IN
CIV. #92-1067
(JAF), DATED
FEBRUARY 18,
1992.

# Andreu: Hearings ruling not binding

## Supreme Court won't order local judges to comply

By ROBERT FRIEDMAN
Of the STAR Staff

Possibly setting the stage for a federal-Commonwealth judicial clash, Supreme Court Chief Justice José Antonio Andreu García said Tuesday he would not direct local judges to follow a federal court ruling that preliminary hearings in criminal cases must be opened to the press and public.

Andreu García, recently sworn in as chief justice and, as such, head of the island's judicial system, indicated that local court judges may use their discretion whether to follow the federal ruling or not.

"Each individual judge is free to follow the [federal court] decision, which is persuasive, but not binding," he said.

But in his decision on opening the hearings, U.S. District Court Judge José A. Fusté indicated his ruling was, indeed, binding on all island courts.

Fusté said he did not also issue an injunction in the case because "... we are sure that the Puerto Rico judiciary will comply with this declaration without further compulsion."

Andreu García made his comments while answering a question on whether he would take steps to ensure the federal decision is followed in the local courts.

Meanwhile, Justice Secretary Jorge Pérez Díaz acknowledged Tuesday that the Commonwealth would appeal the ruling to the 1st U.S. Circuit Court of Appeals in Boston.

On Jan. 31, Fusté declared that the local rule that barred the press and public from criminal hearings violated the 1st and 14th amendments of the U.S. Constitution. The 1st Amendment guarantees freedom of the press and the 14th

Amendment establishes rights of due process of law.

Fusté made the ruling in a lawsuit filed by El Vocero reporter Miguel Rivera Puig after he was denied entrance to a probable cause hearing on charges against House Speaker José R. Jarabo. The House leader has been accused of assaulting former beauty queen Elizabeth Zayas after forcing his way into her home.

Following the federal ruling, another preliminary hearing in the Jarabo case was opened to the press and public. But, in opening the hearing, Superior Court Judge Elpidio Batista sidestepped the federal decision. He said he decided to open the hearing because Jarabo already had made public statements about the case.

On Tuesday, Andreu García said that Fusté's decision applied "to just an individual case, to which this particular judge was a party."

Legal sources noted that the only way Fusté could enforce his ruling was if a motion were filed before him by a member of the press or public subsequently denied admission to a preliminary criminal hearing. Then the judge could enjoin the courts from closing the hearings.

While Fusté would not comment Tuesday on Andreu García's remarks, Juan Marchand, attorney for Rivera Puig in the case, asserted that the federal ruling "should be in force now in all the courts here. Until the court of appeals revokes

the [Fusté] decision, it is the law of the land. The rule to close hearings no longer exists because it has been declared unconstitutional," the attorney said.

In confirming that Fusté's decision would be appealed "within the next few days," Justice Secretary Pérez Díaz said he believed Fusté was wrong in declaring the law on closing hearings unconstitutional.

"It may not be the best law," the secretary said, "but I believe ' ' constitutional and my duty is to the constitutionality of our laws."

Pérez Díaz added he favors changing the law through the Legislature. A proposal to open preliminary criminal hearings is pending in the House.

Supreme Court Chief Justice Andreu García pointed out that a similar case, also filed by El Vocero in an attempt to open criminal court preliminary proceedings, was before the Commonwealth Supreme Court.

"That case is due for a decision soon," said the justice. The case was brought to the island high court on March, 2, 1990.

He said the decision in that case "will apply to the whole [judicial] system. What the Puerto Rico Supreme Court decides applies to all courts of Puerto Rico. What the federal court decides does ' ' 'cessarily apply to all the island .ts,'" Andreu García said.

"This court is not obliged by the [Fusté] decision, and may come out with another interpretation of the law," he said.