Miguel **RIVERA–PUIG,**
Plaintiff, Appellee,

v.

Hon. Gabriel **GARCIA–ROSARIO,**
Defendant, Appellant.

Nos. 92–1239, 92–1397.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1992.

Decided Dec. 18, 1992.

Anabelle Rodriguez, Sol. Gen., Dept. of Justice, Guaynabo, PR, for appellant.

Juan R. Marchand–Quintero, San Juan, PR, for appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Circuit Judge.

This appeal presents important constitutional issues requiring us to strike a balance between state-created due process and privacy concerns, and freedom of the press rights protected by the First Amendment of the United States Constitution. Because we find the latter paramount in this case, and in light of the Supreme Court's decision in *Press–Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*"Press Enterprise II"*), we affirm the district court's decision [1] declaring unconstitutional the closure provision of Rule 23(c) of the Puerto Rico Rules of Criminal Procedure, P.R.Laws Ann. tit. 34, App. II R. 23(c) (1991).[2]

To place this case in its legal context, we will first discuss the Supreme Court's ruling in *Press–Enterprise II.*

## I.  PRESS–ENTERPRISE II

Section 868 of the California Penal Code required preliminary hearings to be open to the public unless "exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial." Cal.Penal Code § 868 (West 1985). A defendant charged with 12 counts of murder and subject to the death penalty requested closure of his preliminary hearing. Defendant's unopposed motion was granted. At the conclusion of the hearing, the magistrate denied Press Enterprise's request for the release of the transcript of the proceedings, and sealed the record. The state and Press–Enterprise lost their appeal to the

**1.** Reported at *Rivera–Puig v. Garcia–Rosario,* 785 F.Supp. 278 (D.P.R.1992).

**2.** Rule 23(c) of the Puerto Rico Rules of Criminal Procedure provides:

(c) **Proceeding during the hearing.** If the person appears at the preliminary hearing and does not waive it, the magistrate shall hear the evidence. *The hearing shall be held privately unless the defendant requests at the commencement thereof that it be public.* The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. The prosecuting attorney may be present at the hearing and he may also examine and cross-examine all witnesses and introduce new evidence. Upon being re-

quested to do so, the prosecuting attorney shall put at the disposal of the person the sworn statements of the witnesses whom he called to testify at the hearing that he has in his possession. If in the opinion of the magistrate the evidence shows that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall forthwith hold him to answer for the commission of the offense in the appropriate Part and Division of the Court of First Instance; otherwise the magistrate shall exonerate him and order that he be set free. . . .
(emphasis added).

superior court on the grounds that release of the transcript might prejudice defendant's right to a fair and impartial trial.

After the defendant waived his right to a jury trial, the superior court released the transcript. Appeals to the higher courts in California nevertheless continued. These courts ruled that there was no general First Amendment right of access to preliminary hearings, and that the defendant's right to a fair and impartial trial by a jury uninfluenced by news accounts shifted the burden in favor of closure if defendant established a reasonable likelihood of substantial prejudice.

■ Ultimately, the case arrived at the United States Supreme Court. The Court noted that maintaining a criminal trial process open to neutral observers is an important means of assuring a fair trial as well as maintaining the appearance of fairness. *Press-Enterprise II,* 478 U.S. at 7, 106 S.Ct. at 2739. It then discussed what it called the "tests of experience and logic." If a proceeding passes these tests, a qualified First Amendment right to public access attaches. *Id.* at 9, 106 S.Ct. at 2740. These tests are comprised of two considerations: (1) whether a tradition of accessibility to the type of hearing in question exists; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8, 106 S.Ct. at 2740.

Applying these tests to California's preliminary hearing, the Court first found that state and federal courts have almost uniformly conducted preliminary hearings in open court. *Id.* at 10–11, 106 S.Ct. at 2742.

Under the second consideration of the tests, the Court found that public access to the California preliminary hearings would play a significant positive role in the actual functioning of the process. *Id.* at 11–12, 106 S.Ct. at 2742. The Court reasoned that it had already determined in prior cases that public access plays a significant role in criminal trials. *Id.* It then concluded that the "California preliminary hearings are sufficiently like trials to justify the same conclusion." *Id.* at 12, 106 S.Ct. at 2742.

In both criminal trials and the California preliminary hearing, the accused has an absolute right to: (1) an elaborate preliminary hearing before a neutral magistrate; (2) personally appear at the hearing; (3) representation by counsel; (4) cross-examine hostile witnesses; (5) present exculpatory evidence; and (6) exclude illegally obtained evidence. *Id.* at 12–13, 106 S.Ct. at 2742. In addition, in the California preliminary hearing, if the magistrate finds probable cause, he binds the accused over for trial, which in most cases leads to a guilty plea. Consequently, "the preliminary hearing is often the final and most important step in the criminal proceeding," and "in many cases provides 'the sole occasion for public observation of the criminal justice system.'" *Id.* (quoting *San Jose Mercury-News v. Municipal Court,* 30 Cal.3d 498, 179 Cal.Rptr. 772, 780, 638 P.2d 655, 663 (1982)). The Court commented that the very absence of a jury in these proceedings makes access even more important as "an inestimable safeguard against corrupt or overzealous prosecutor[s] and ... compliant, biased, or eccentric judge[s]." *Id.*

Accordingly, the Court ruled that proceedings must remain open unless specific, on-the-record findings demonstrate that "'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 13–14, 106 S.Ct. at 2743 (quoting *Press-Enterprise Co. v. Superior Court ("Press-Enterprise I"),* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984)). Against this legal backdrop we consider the present case.

## II. FACTUAL BACKGROUND

On April 4, 1991, Miguel Rivera–Puig ("Rivera–Puig"), a newspaper reporter for the San Juan, Puerto Rico daily *El Vocero de Puerto Rico ("El Vocero"),* sought access to a preliminary hearing before the Hon. Gabriel García–Rosario, a district court judge of the Commonwealth of Puerto Rico. Rivera–Puig filed a written request, as a newspaper reporter, seeking physical access to the proceedings, or a

recording of the hearing.[3] Judge García–Rosario denied this request. Rivera–Puig requested access to another preliminary hearing before the same judge on January 16, 1992. The judge also denied this request.

Appellant candidly admits that the exclusion of the press and public from preliminary hearings is the rule, rather than the exception, pursuant to the requirements of Rule 23(c). In the face of this barrier Rivera–Puig went in search of legal redress for his federal constitutional claim.

## III. THE DISTRICT COURT PROCEEDINGS

On January 17, 1992, Rivera–Puig filed an action in the United States District Court for Puerto Rico seeking a declaratory judgment that the Rule 23 closure provision was unconstitutional and an injunction against enforcement of the rule. Although the suit named Judge García–Rosario as the defendant, the plaintiff also served the complaint on the Secretary of Justice of the Commonwealth and the Director of the Courts Administration of Puerto Rico. In a motion filed with the complaint, Rivera–Puig claimed that two preliminary hearings would soon take place involving charges against prominent public officials,[4] but that the identity of the presiding judges was unknown until the day of the hearings. Thus, it was difficult to challenge the closure of hearings beforehand. Because he wanted access to these hearings, Rivera–Puig sought an expedited hearing to decide the validity of the closure provisions of Rule 23.

The hearing was held on January 23, 1992. In addition to the facts previously stated, the district court heard the testimony of Manny Suárez, a reporter for the San Juan English language daily, *The San Juan Star.* Suárez testified that on January 22, 1992 he was denied access to a review of a preliminary hearing determination held in the San Juan part of the Superior Court of Puerto Rico pursuant to Rule 24(c) of the Puerto Rico Rules of Criminal Procedure.[5]

The district court also learned of three local court actions involving the validity of Rule 23(c). In the first of these suits, *El Vocero de Puerto Rico v. Estado Libre Asociado de Puerto Rico,* Civil Appeal AC–90–191, (the *"El Vocero* appeal"), the superior court decided in favor of the rule's constitutionality on January 29, 1990. An appeal went to the Supreme Court of Puerto Rico where it was pending resolution since February 1, 1991. Appellants twice moved in that court for expedited resolution and sought mandamus against the seven justices of the Supreme Court of Puerto Rico, moving for decision of the submitted appeal. The court rejected these efforts in a cryptic ruling dated January 22, 1992.[6]

---

3. Rivera–Puig, who has worked for *El Vocero* since 1979, made several prior similar requests. The local courts steadfastly denied him admission to preliminary hearings pursuant to Rule 23(c).

   Puerto Rican preliminary hearings generally are not recorded. There is thus no opportunity for post-hearing access to these proceedings. It should be noted that in fiscal years 1987–1988, 28,796 preliminary hearings were held in the courts of Puerto Rico. *Rivera–Puig,* 785 F.Supp. at 282.

4. A preliminary hearing had been scheduled for February 3, 1992 regarding criminal charges against the Speaker of the House of Representatives of Puerto Rico's Legislature. Similar proceedings were scheduled for January 30, 1992, and March 17, 1992 involving criminal charges against an Assistant Superintendent of Police. Both cases were highly charged with public interest throughout Puerto Rico.

5. Rule 24 governs a proceeding which may be held after a preliminary hearing. Subdivision (c) allows the prosecuting attorney to resubmit the case, using the same or different evidence, to a judge in the superior court if the judge in the Rule 23 preliminary hearing found no probable cause or found probable cause for a lesser offense than the one charged. *See Pueblo v. Cruz–Justiniano,* 116 P.R.Dec. 28 (Official Translations at 35) (1984); *Alvarez v. Tribunal Superior,* 102 P.R.Dec. 236 (Off.Trans. at 296) (1974). Procedures under Rule 24 are not considered appeals from the judge's ruling but rather are independent hearings. *Cruz–Justiniano,* 116 P.R.Dec. at 30 (Off.Trans. at 38). *See also Rivera–Puig,* 785 F.Supp. at 281 n. 5.

6. The court concluded that it lacked jurisdiction to issue a writ of mandamus against itself and that the appeal was receiving the priority merited by the important nature of the controversy in question.

The second suit involving Rule 23(c) was *Pueblo de Puerto Rico v. Lara–Imbert*, CE–91–235 (June 28, 1991), in which the Supreme Court of Puerto Rico reversed a superior court ruling which, relying on *Press–Enterprise II*, refused closure of the preliminary hearing. That decision, however, was based on a perceived lack of a "case and controversy," not on the merits.

A third case, *El Vocero de Puerto Rico v. Hon. Carlos Cabán–García*, 92 J.T.S. 1 at 9121 (1992), was dismissed by the Supreme Court of Puerto Rico for lack of jurisdiction.

In a comprehensive and well-founded opinion, the federal district court decided the present case on January 31, 1992. The district court ruled that: (1) the doctrine of "judicial immunity did not bar the issuance of prospective injunctive relief against a judicial officer acting in [his] judicial capacity," (quoting *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984)); (2) an Article III "case and controversy" existed between Rivera–Puig, who was denied access to the preliminary hearings, and Judge García–Rosario who enforced the closure provisions of Rule 23; (3) abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was inappropriate because plaintiff did not seek an injunction of any criminal proceeding, but rather was requesting access to future preliminary hearings; (4) abstention pursuant to *Colorado River Water Conservation District v. United States* ("*Colorado River*"), 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), was inappropriate because the "exceptional circumstances" alluded to in that case were not present in this one; and on the merits (5) the closure provision of Rule 23(c) fell squarely within the prohibition of *Press Enterprise II.* Notwithstanding this ruling, the district court refused to issue an injunction because it was "sure that the Puerto Rico judiciary [would] comply with this declaration without [the need for] further compulsion." *Rivera–Puig*, 785 F.Supp. at 290.

On February 12, 1992, Rivera–Puig was again refused entry to several preliminary hearings despite the local judges' knowledge of the district court's ruling. Thus, he filed a motion with the district court renewing his request for injunctive relief.[7] The district court judge again concluded that "Rule 23(c)'s closure provision flagrantly and patently violate[d] express constitutional precedent by the Supreme Court of the United States," and that this violation was causing "[g]reat and immediate irreparable first amendment injury." *Id.* at 292. Yet, he again refused to issue the injunction, expressing pious hope that the "Puerto Rico judiciary, a traditionally responsible institution," would comply with the decision without the need for "the strong remedy of injunction." *Id.* at 292–93.

Defendant and the intervenor, the Department of Justice of the Commonwealth,[8] appealed, raising three issues: (1) whether the district court lacked Article III jurisdiction in that defendant-appellant has no interest adverse to that of Rivera–Puig; (2) whether the district court should have abstained from hearing the case pursuant to *Younger*, 401 U.S. 37, 91 S.Ct. 746, *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236, or *Railroad Commission of Texas v. Pullman Co.* ("*Pullman*"), 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and (3) whether Rule 23(c) runs contrary to *Press Enterprise II.*

Before discussing these issues we will recount the most recent development in this convoluted case.

---

7. The motion was accompanied by a sworn statement setting out the facts previously described as well as a newspaper account which appeared in the February 12, 1992 *San Juan Star* quoting the Chief Justice of the Supreme Court of Puerto Rico as stating that "[e]ach individual judge is free to follow the [federal court] decision, which is persuasive, but is not binding." Robert Friedman, *Andreu: Hearings Ruling Not Binding, San Juan Star,* February 12, 1992, at 6.

8. We found nothing in the record that granted the Department of Justice intervenor status. However, they have acted as intervenors throughout the case, and we will treat them as such.

## IV. THE EL VOCERO APPEAL

■ On July 8, 1992, the Supreme Court of Puerto Rico decided the *El Vocero* appeal. *El Vocero de Puerto Rico, et al. v. Estado Libre Asociado de Puerto Rico*, 92 J.T.S. 108 (July 8, 1992).[9] The court found that the preliminary hearing promulgated by Rule 23 differed from the California one found to be invalid by *Press Enterprise II*, and ruled it constitutional. It is crystal clear that we lack appellate or non-habeas corpus jurisdiction over decisions of the courts of any state, including the Commonwealth of Puerto Rico. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). However, the *El Vocero* appeal is at the heart of many of appellants' arguments. We thus discuss this ruling, not in an appellate or supervisory posture, but to garner the Puerto Rico Supreme Court's definitive position on Rule 23(c) procedure and to determine how that position affects the federal proceedings.

The case concerns the same issue as the present one: the constitutionality of Rule 23(c); however, the *El Vocero* and another reporter brought the case.

The Puerto Rico Supreme Court, by a 4 to 3 vote, concluded that criminal defendants' right to privacy ("derecho a la intimidad") and to a fair and impartial trial override any right of access by the public or press in the Rule 23(c) preliminary hearing.

A large part of the majority opinion is a historical and philosophical discourse regarding the Puerto Rican legal system during the Spanish regime as it relates to *Press–Enterprise II* and California's preliminary hearing. According to the court, California's preliminary hearing had been open to the public since its inception in 1872. However, the court found this not to be the case in Puerto Rico. *See El Vocero*, 92 J.T.S. at 9832–42. According to the court, shortly after the change in sovereignty in 1898, Puerto Rico adopted California's Criminal Procedure Code except for those provisions dealing with preliminary hearings. *Id.* at 9842 (citation omitted). It was not until 1964 that "*'fundamentally inspired'* by the federal rule," Rule 23 was adopted. *Id.* at 9842. The court then engaged in a comparative analysis of the Puerto Rican and Californian preliminary hearings, concluding that the local one, contrary to the one in California, "is a limited procedure, investigative-judicial in nature, which does not resemble a trial sufficiently to have *Press–Enterprise II* apply." *Id.* at 9846.

Interestingly enough, however, the court opinion then applied the *Press–Enterprise II* experience and logic tests, *id.* at 9847, an analysis which would seem appropriate before rather than after reaching a conclusion under that case. Balancing the right to privacy in the Puerto Rico Constitution,[10] and the right to a fair trial, against the right of access by the press and public to the preliminary hearing, the Puerto Rican court reiterated the validity of the closure provision of Rule 23(c). *Id.* at 9847–52.

## V. LEGAL ANALYSIS OF THE PRESENT APPEAL

### A. ARTICLE III JURISDICTION

■ On appeal, appellants argue that "the district court lacked jurisdiction to entertain the complaint filed against defendant-appellant in his official capacity because the parties have no adverse legal interest for Article III purposes or no actual controversy within the meaning of the Declaratory Judgment Act is present." Appellants' Brief at p. 11. Appellants never raised this issue before the district court. Their original Article III "case or controversy" argument asserted only that Rivera–Puig had not personally suffered any actual or threatened injury.[11] Because

---

9. This is the Spanish language citation as the decisions are no longer routinely translated to English.

10. *See* P.R. Const., art. II, § 8.

11. We note that appellants' original claim lacks merit. The district court correctly found that Rivera–Puig suffered actual or threatened injury in that he was prevented from exercising his qualified First Amendment right of access.

jurisdictional issues can be raised at any stage of a federal case, *Morrison v. Olson,* 487 U.S. 654, 669–70, 108 S.Ct. 2597, 2608, 101 L.Ed.2d 569 (1988), we address this new argument even though we consider it disingenuous.

In every recent major Supreme Court case involving challenges to court rules, the enforcing court was a party defendant. *See Press–Enterprise II,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (Superior Court of California); *Press–Enterprise I,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (Superior Court of California); *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (Magistrate for the County of Culpeper, Virginia); *Globe Newspaper Co. v. Superior Court for County of Norfolk,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (Superior Court of Norfolk County, Massachusetts). In fact, in appellants' Motion to Dismiss before the district court, among the grounds urged as a basis for that relief was plaintiff's alleged failure to join as indispensable parties "the superior courts which are entertaining the criminal actions." *See* Motion to Dismiss, at 1–2.

■ Moreover, Judge García–Rosario, as the *enforcer* of the Rule 23(c) closure provisions, has an interest adverse to those seeking access to preliminary hearings conducted before him. *See Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (§ 1983 action against county magistrate to prevent prospective *enforcement* of her practice of incarcerating persons waiting trial for nonincarcerable offenses was proper); *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980) (Virginia Supreme Court and its chief justice, in his individual and official capacity, were proper defendants in a § 1983 action for declaratory and injunctive relief against *enforcement* of court-promoted rules).

Appellants characterize Judge García–Rosario's actions with respect to the closure provisions of Rule 23(c) as those of "a neutral adjudicator." By this allegation appellants seek to invoke *In re Justices of the Supreme Court of Puerto Rico ("In re Justices "),* 695 F.2d 17, 21 (1st Cir.1982), in which we held that "ordinarily, no 'case or controversy' exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of that statute." In that case, however, both adjudicative and enforcement functions of the Puerto Rico justices were at issue. *In re Justices* prohibits a suit against Judge García–Rosario for any actions related to his adjudicatory functions. However, it also ruled that, if judges possess administrative responsibilities, they are proper parties for "case or controversy" purposes on those issues. *Id.* at 27; *see also Consumers Union,* 446 U.S. at 734–37, 100 S.Ct. at 1976–77 (judges can be sued for declaratory and injunctive relief in connection with their enforcement of court rules).

Judge García–Rosario is an adjudicator with respect to criminal defendants that come before him in Rule 23 hearings. With respect to members of the public seeking access to those hearings, however, he is an enforcer or "administrator." Thus, Judge García–Rosario is a proper party in this case under *In re Justices.*

■ Moreover, there are *two* appellant parties in the present case, Judge García–Rosario *and* the commonwealth's chief enforcement officer, the Secretary of Justice, who has assumed intervenor status. *See* "Notice of Appeal," "Amended Notice of Appeal," and "Motion in Opposition to Urgent Motion under FRCP Rule 52(b) Requesting Injunctive Relief and Hearing Thereof." Thus, the district court had Article III jurisdiction even if Judge García–Rivera was an improper party under *In re Justices.*

We thus come to neuralgic issues involving principles of federalism and comity that wander through the *El Vocero* appeal like meteors lost in space, and which we must solve before we are free to consider more mundane questions.

## B. ABSTENTION AND RELATED MATTERS [12]

Appellants argue that the district court should have abstained from hearing the case because the *El Vocero* case was pending in the Puerto Rico courts. Appellants offer three principle cases in support of that argument: *Younger*, 401 U.S. 37, 91 S.Ct. 746, *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236, and *Pullman*, 312 U.S. 496, 61 S.Ct. 643.

### 1. *Younger* Abstention.

*Younger*, 401 U.S. at 43–54, 91 S.Ct. at 750–55, counsels against federal court injunctions of state criminal proceedings pending against the federal plaintiff, absent special circumstances. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975), extended this principle to state civil enforcement cases pending against the federal plaintiff. The Supreme Court further extended the doctrine to civil proceedings pending against the federal plaintiff which: (1) are judicial in nature; (2) concern an important state interest; and (3) afford the federal plaintiff an opportunity to raise federal defenses.[13] *Middlesex Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1981). Finally, the Supreme Court held that the doctrine includes state criminal cases pending against individuals who have interests that are intertwined with the federal plaintiff's interests. *Hicks v. Miranda*, 422 U.S. 332, 348, 95 S.Ct. 2281, 45 L.Ed.2d 223

(1974). Collectively, these cases establish the *Younger* abstention doctrine.

█ The *Younger* abstention doctrine does not permit abstention in the present case because the district court's ruling did not enjoin or interfere with any state proceeding pending against Rivera–Puig or anyone whose interests are intertwined with his. The criminal cases that Rivera–Puig wishes to attend are future preliminary hearings of third-person criminal defendants. *Cf. Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772 (1st Cir.1990). These defendants have no relation whatsoever to Rivera–Puig.

Similarly, the *El Vocero* case was not *pending against Rivera–Puig* or someone whose interests were intertwined with his. Appellants point out that Rivera–Puig's employer, who brought the *El Vocero* case, had similar interests as Rivera–Puig. *See Hicks*, 422 U.S. at 348–50, 95 S.Ct. at 2291–92 (theater employees being prosecuted in state court had intertwining interests with theater which filed suit in federal court to enjoin proceedings against them). However, the proceedings in *El Vocero* were not *pending against El Vocero*. *Kercadó–Meléndez v. Aponte–Roque*, 829 F.2d 255, 259 (1st Cir.1989). "In the paradigm situation calling for *Younger* restraint, the state defendant brings a federal action challenging the statute [which is simultaneously being applied against him]." *Fernández v. Trías Monge*, 586 F.2d 848, 851 (1978); *see, e.g.*,

12. Res judicata, estoppel, and similar matters are not at issue. At oral argument, appellants specifically disclaimed these defenses. That is just as well, as they are affirmative defenses that are waived unless raised in the answer. *See* Fed.R.Civ.P. 8(c); *Badway v. United States*, 367 F.2d 22, 25 (1st Cir.1966). Appellants failed to raise these defenses in their answer.

Moreover, even if appellants had properly raised these defenses, it is doubtful that they would have been available in this case. Federal courts must look to state law to see what effect will be given to state court judgments. *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Schneider v. Colegio de Abogados de Puerto Rico*, 546 F.Supp. 1251, 1269 (D.P.R.1982). Puerto Rico requires the parties in each case to be identical for these defenses to apply. P.R.Laws Ann. tit. 31, § 3343 (1991). Neither plaintiff nor defendant in the present

case are parties in the *El Vocero* case. That action is not a class action, and the interests of a newspaper are not necessarily the same of those of a reporter. Thus, the required "perfect identity of parties" does not exist in this case. *See In re Justices*, 695 F.2d at 26 (where some plaintiffs in federal suit did not participate in previous state suit, claims in federal suit not barred by res judicata or collateral estoppel).

13. Because the *El Vocero* proceeding is not a criminal or civil enforcement case, and it is not "uniquely in the furtherance of the state courts' ability to perform their judicial functions," *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 368, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1988), we doubt that the present case implicates the 'type of important state interest contemplated in *Middlesex Ethics Comm.* However, we need not reach that issue today.

*Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (federal plaintiff seeking to enjoin state plaintiff from enforcing judgment against him); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (federal plaintiffs seeking to enjoin state proceedings against them for child abuse); *United Books, Inc. v. Conte,* 739 F.2d 30 (1984) (federal plaintiff seeking to enjoin future prosecutions against it). In the present case, El Vocero *brought* the state court lawsuit to determine the constitutionality of Rule 23. The state court in *El Vocero* was not applying Rule 23 against Rivera–Puig. Thus, even if its interests were intertwined with Rivera–Puig's, the present situation is not the type contemplated by the *Younger* abstention doctrine.

The best that can be said in appellants' favor is that a parallel state suit, involving parties with similar interests, has been decided in a manner adverse to Rivera–Puig's claims in the federal action. To find that the district court in the present case should have abstained because of the *El Vocero* case would make abstention the rule rather than the exception. *Iowa Mut. Ins. v. La-Plante,* 480 U.S. 9, 22, 107 S.Ct. 971, 979, 94 L.Ed.2d 10 (1987) (Stevens, J., concurring in part and dissenting in part) ("The mere fact that a case involving the same issue is pending in another court has never been considered sufficient reason to excuse a federal court from performing its duty 'to adjudicate a controversy properly before it.'") (citation omitted); *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910) ("pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction"). The "mere potential for conflict in the results of adjudication does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River,* 424 U.S. at 816–17, 96 S.Ct. at 1246 (citing *England v. Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964)).

Last, but not least, there are extraordinary reasons present in this case which militate against our restraining federal court action. First, we believe that Rivera–Puig had a clear First Amendment right which is being flagrantly violated by the commonwealth authorities. *See Playboy Enter. v. Public Serv. Comm'n,* 906 F.2d 25, 31 (1st Cir.1990) (there is a "willingness of federal courts, including the Supreme Court, to entertain declaratory and injunctive actions against prospective enforcement of state laws which threaten to discourage expression"). Second, the nature of the matters being decided in the preliminary hearings in the commonwealth courts to which Rivera–Puig sought access were not only highly charged with public interest, but were also unique and non-recurring. Thus, time was of the essence in determining Rivera–Puig's constitutional rights. Third, the matters had been pending before the commonwealth courts for an inordinate length of time, for no reason apparent from the record. These factors additionally counsel against *Younger* abstention in this case.

## 2. *Colorado River* Abstention.

Under *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 (citing *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)), a federal court may ordinarily abstain under exceptional circumstances. Because a "federal court's duty to exercise jurisdiction is relaxed in the declaratory judgment context," *Fuller Co. v. Ramón I. Gil, Inc.,* 782 F.2d 306, 308–09 n. 3 (1st Cir.1986), a court may abstain in declaratory judgments under less than exceptional circumstances. *Id.*

■ Recently, in *Burns v. Watler,* 931 F.2d 140, 146 (1st Cir.1991), we identified a number of factors that have emerged as the core of the *Colorado River* abstention doctrine:

(1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the ·order in which the forums ob-

tained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties.... (citations omitted). We also found that we should consider the principles underlying removal jurisdiction and whether the federal litigation is contrived or vexatious.[14] *Id.*

■ This list is not exhaustive, *id.*, and a strict numerical scorecard of these points is not determinative. However, it is helpful in assessing whether abstention is appropriate. In balancing these factors, we conclude that they do not favor abstention. First, there is no res involved. Second, we can perceive no additional inconvenience from litigating in the federal forum as opposed to the commonwealth. Third, there is no piecemeal litigation because each case is self-contained and involves different parties and facts. Fourth, federal law controls the outcome of the underlying issue. Fifth, there is no allegation or evidence that the federal litigation is vexatious or contrived, and this case was not removed from the state courts.

Moreover, the sequence in which the forums obtained jurisdiction is irrelevant because this litigation and the *El Vocero* case are not identical. There are different plaintiffs and different defendants, and the *El Vocero* case is not a class action. Furthermore, although the legal principles are the same, the factual basis giving rise to the present case, and those in the *El Vocero* case, differ. Finally, the right of accessibility espoused by *Press–Enterprise II* is not limited to the press, but also includes the "general public." *Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. at 2740. Thus, Rivera–Puig, either in his capacity as a professional reporter, or as part of the "general public," should not be restricted in bringing a federal suit to protect against the violation of *his* constitutional rights, irrespective of other suits filed by *other* members of the press or general public.

With respect to whether the state forum will adequately protect the interests of the parties, although some of the events reported in this case are disturbing indeed, we refuse, at least as the record now stands, to "rule on the assumption that [commonwealth] judges will not be faithful to their constitutional responsibilities." *Huffman v. Pursue, Ltd.,* 420 U.S. at 611, 95 S.Ct. at 1211; *see also In re Justices,* 695 F.2d at 23, ("[I]t is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion.").[15]

In conclusion, the *Colorado River* factors do not warrant abstention in the present case.

### 3. *Pullman* Abstention.

■ Appellants contend that the district court should have abstained under the doctrine enunciated in *Pullman.* Appellants have waived this argument by failing to raise it before the district court. *E.g., Boston Celtics Ltd. Partnership v. Shaw,* 908 F.2d 1041, 1045 (1st Cir.1990). However, even had appellants properly argued for *Pullman* abstention below, the argument would fail.

Under *Pullman,* 312 U.S. at 501, 61 S.Ct. at 646, federal courts should abstain when state law is uncertain, and a clarification of the law in a pending state court case might make the federal court's constitutional rul-

---

**14.** These factors "run substantially parallel to the criteria that historically have been deemed relevant in determining whether to accept or decline jurisdiction over a [declaratory judgment action]." *Fuller Co.,* 782 F.2d at 308–09 n. 3.

**15.** We do not question the power of the commonwealth courts to reach their own conclusions in the separate commonwealth proceedings. Although we do not believe that the Rule 23(c) closure provisions are in any way ambiguous, the *El Vocero* opinion is helpful because it definitively expresses the views of the highest Commonwealth court regarding *its* view of the Rule 23 proceedings and of the validity of the closure provisions of Rule 23(c), thus leaving no doubt as to how it will be interpreted in *that* jurisdiction. *Cf. Huffman,* 420 U.S. at 616 n. 2, 95 S.Ct. at 1215 n. 2 ("Abstention [may be] appropriate where authoritative resolution by state courts of ambiguities in a state statute is sufficiently likely to avoid or significantly modify federal questions raised by the statute.... Abstention is justified in such cases primarily by the policy of avoidance of premature constitutional adjudication.").

ing unnecessary. The *Pullman* doctrine rests on the desirability of having federal courts avoid unnecessary rulings on constitutional issues. Wright, Miller & Cooper, *Federal Practice and Procedure,* § 4241 at 33 (2d ed.1988).

■ To warrant *Pullman* abstention: (1) there must be substantial uncertainty over the meaning of the state law at issue; and (2) there must be a reasonable possibility that the state court's clarification of the law will obviate the need for a federal constitutional ruling. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236–37, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1983).

When the federal claim is not entangled with complicated unresolved state law questions, abstention is inappropriate. *Wisconsin v. Constantineau,* 400 U.S. 433, 438, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Indeed, abstention in cases where state law questions are unambiguous is impermissible because it "would convert abstention from an exception into a general rule." *Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero,* 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976); *see also Harris County Comm'rs. Court v. Moore,* 420 U.S. 77, 84–85, 95 S.Ct. 870, 876, 43 L.Ed.2d 32 (1975). A federal court should not abstain simply to give a state court the first opportunity to vindicate federal rights. *McNeese v. Board of Education,* 373 U.S. 668, 672, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963).

No uncertainty surrounds the meaning of Rule 23(c)'s closure provision. The rule explicitly states that "[t]he [preliminary]

hearing *shall be held privately* unless the defendant requests at the commencement thereof that it be public." (emphasis added). This issue has long been pending in the commonwealth courts, and Rivera–Puig and the public have been suffering irreparable constitutional harm by appellants' refusal to comply with the law of the land.

Moreover, "[a] district court stay pursuant to *Pullman* abstention is entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state-law grounds." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 10 n. 9, 103 S.Ct. 927, 934 n. 9, 74 L.Ed.2d 765 (1983); *see also England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Even after a *Pullman* stay, Rivera–Puig would be back in federal court after the *El Vocero* decision.

Abstention, under any of its multiple doctrines, was inappropriate in this case.[16] We thus arrive at the central issue of the case, the constitutional validity of the closure provisions of Rule 23(c).

### C. RULE 23(c)

Having determined that this controversy is properly before us, we are duty-bound to independently assess the constitutionality of Rule 23(c).[17] *Press–Enterprise II,* 478 U.S. at 7, 106 S.Ct. at 2739.

■ Rights protected by the Free Speech Clause of the First Amendment apply in Puerto Rico. *Posadas de Puerto*

---

**16.** Appellants also suggest that the factors elaborated by this court in *El Día v. Hernández Colón,* 963 F.2d 488 (1st Cir.1992), to guide the discretion of district courts in determining whether to grant declaratory relief require us to reverse the district court's grant of declaratory relief here. These factors include: (1) the general policy that unsettled questions of constitutional law should be addressed only when absolutely necessary; (2) the extent to which a federal case is ripe for adjudication; (3) the desirability of abstention; (4) comity between federal and commonwealth courts; and (5) the equity-like nature of the action. *Id.* at 494–98. For the reasons discussed herein, we find *El Día* distinguishable from the facts of the present case. Rather than compelling us to reverse the district court's grant of declaratory relief, we think that

the principles elaborated in *El Día* support the district court's conclusion that declaratory relief was warranted.

**17.** As we have indicated, the Puerto Rican Supreme Court's vision of the Rule 23(c) preliminary hearing aids our analysis. However, Spanish 19th century criminal procedure cannot be the litmus test against which we measure the validity of the rule. Indeed, even Spain's constitutional courts look to the United States Supreme Court for precedent. *See* M. Rodríguez Piñero, *Los Tribunales Constitucionales en Europa,* 57 Rev.Jur.U.P.R. 5, 31 (1988) (The author is an associate justice on the Constitutional Court of Spain).

*Rico Associates v. Tourism Co.*, 478 U.S. 328, 331, 106 S.Ct. 2968, 2971, 92 L.Ed.2d 266 (1986). Thus the principles espoused in *Press–Enterprise II* have full vigor in this case, and we must apply the experience and logic tests. *See Press–Enterprise II,* 478 U.S. at 9, 106 S.Ct. at 2740.

▇▇ Under these tests, the first consideration is whether there is a tradition of accessibility to the Rule 23(c) preliminary hearing. In *El Vocero,* the Puerto Rico Supreme Court concluded that Puerto Rico's preliminary hearings have always been private. However, *Press–Enterprise II,* 478 U.S. at 10, 106 S.Ct. at 2741, refers to the experience in that *type or kind* of hearing throughout the United States, not the experience in only one jurisdiction. Indeed, the Puerto Rico preliminary hearings essentially duplicate the California and federal preliminary hearings, which the Supreme Court determined have almost uniformly been open. *Id.* at 10–11, 106 S.Ct. at 2741–42. Thus, there is a tradition of openness that applies to the Rule 23(c) preliminary hearing.

The second consideration is "whether public access plays a significant positive role" in the Rule 23(c) preliminary hearing. *Id.* at 8, 106 S.Ct. at 2740. According to the Supreme Court, criminal trials pass this test. *Id.* at 11–12, 106 S.Ct. at 2742. Like the California preliminary hearing at issue in *Press–Enterprise II,* the Rule 23(c) preliminary hearing is sufficiently like a trial to pass the test as well.

The hearings are held before a detached neutral magistrate; both prosecutor and defense counsel are present; evidence may be presented by both sides, including exculpatory evidence by the accused; witnesses are heard and can be cross-examined; and based on the evidence, the magistrate will either hold the accused over for trial or exonerate and set him or her free. It is clear that the magistrate is performing an adjudicative function in the preliminary hearing and, like California, this hearing may be the only formal judicial proceeding, both in the cases where the accused pleads

guilty and in those cases where no probable cause is found.

*Rivera–Puig,* 785 F.Supp. at 289. Appellants have not challenged these conclusions, and we find that they are uncontrovertible. Thus, under the experience and logic tests, the Rule 23(c) preliminary hearings trigger First Amendment protection.

Moreover, *Press Enterprise II* decides this exact case because the Rule 23(c) preliminary hearings are almost identical to the California preliminary hearing that was at issue in that case. The following comparison between the California and Puerto Rico proceedings demonstrates that similarity:

(1) Both proceedings are held before a neutral, detached magistrate, who performs an adjudicative function as judge, not as investigator or as interested party. *See People v. Opio–Opio,* 104 P.R. Dec. 65 (Off.Trans. at 65) (1975); *Young v. Superior Court of San Joaquin County,* 253 Cal.App.2d 848, 61 Cal.Rptr. 355 (1967).

(2) The judge must rule on issues of law as applied to the facts of each case. *See People v. Opio–Opio,* 104 P.R.Dec. 65 (Off.Trans. at 65) (1975); *Young v. Superior Court of San Joaquin County,* 253 Cal.App.2d 848, 61 Cal.Rptr. 355 (1967).

(3) Both hearings result in a ruling of probable cause to hold over for trial, or in the dismissal of charges against the accused. *People v. Rodríguez–Aponte,* 116 P.R.Dec. 653 (Off.Trans. at 850) (1986); *People v. Uhlemann,* 9 Cal.3d 662, 108 Cal.Rptr. 657, 511 P.2d 609, 610 (Cal.1973).

(4) Ultimate guilt or innocence of the accused beyond reasonable doubt is not decided at this stage; the hearing offers the prosecutor the opportunity to show that there exists probable cause to believe that an offense has been committed and that the accused committed it. *People v. Figueroa–Castro,* 102 P.R.Dec. 279 (Off.Trans. at 352) (1974); Cal.Penal Code, § 866.

(5) Due to dismissal of charges, and the plea bargaining generated after a finding of probable cause, often the hearing is

the only opportunity for the public or the press to observe the functioning of the criminal process and the government officials involved. *People v. Cruz–Justiniano,* 116 P.R.Dec. 28 (Off.Trans. at 35) (1984); *San Jose Mercury–News v. Municipal Court,* 30 Cal.3d 498, 179 Cal. Rptr. 772, 638 P.2d 655, 659 (1982).

(6) The accused may appear before the judge assisted by counsel, who has the right to cross-examine the state's witnesses, present evidence, and otherwise defend his client within formalities similar to trial. *El Vocero de Puerto Rico,* 92 J.T.S. 108 (1992).

(7) The accused may present exculpatory evidence, as well as certain defenses. *People v. Vélez–Pumarejo,* 113 P.R.Dec. 349 (Off.Trans. at 455) (1982); *Jennings v. Superior Court of Contra Costa County,* 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304, 312 (1967).

(8) Both judicial proceedings provide due process to the accused in order to minimize the possibility that an individual will be submitted arbitrarily to the rigors of trial. *See People v. López–Camacho,* 98 P.R.Dec. 687, 689 (1970); *Jones v. Superior Court of San Bernardino,* 4 Cal.3d 660, 94 Cal.Rptr. 289, 483 P.2d 1241 (1971).

(9) The People must provide to the accused the sworn statements of witnesses against him. In Puerto Rico, the documents are shown at the hearing; in California, the judge reads the statements to the accused. Rule 23(c); Cal.Penal Code, § 864.

(10) The prosecutor does not have to submit all the evidence he has at this stage; the People can rest when he feels that sufficient evidence has been presented. *See Vélez–Pumarejo,* 113 P.R.Dec. 349; *McDaniel v. Superior Court of San Diego County,* 55 Cal.App.3d 803, 126 Cal. Rptr. 136 (1976).

(11) Evidence rules are followed substantially in both jurisdictions. Rule 23; *People v. Esteves–Rosado,* 110 P.R.Dec. 334 (Off.Trans. at 424 (1980)); *People v. Schuber,* 163 P.2d 498, 499 (Cal.1945); Cal.Penal Code, § 872.5.

(12) In both jurisdictions, the hearing must be held within "speedy trial" time limitations. *Opio–Opio,* 104 P.R.Dec. 65; P.R. Laws Ann. tit. 34 App. II. R. 64(n)(4) and (5); Cal.Penal Code, § 825.

(13) If the accused desires to discover evidence not used in the hearing against him, he may use other discovery mechanisms which are available after the hearing is held. *See Rodríguez–Aponte,* 116 P.R.Dec. 653; *People v. Superior Court of Shasta County,* 264 Cal.App.2d 694, 70 Cal.Rptr. 480 (1968).

(14) The prosecutor can file a second time if he does not prevail. P.R.Laws Ann. tit. 34 App. II R. 24; *See also People v. Félix–Avilés,* 91 J.T.S. 50 (1991); *People v. Uhlemann,* 9 Cal.3d 662, 108 Cal.Rptr. 657, 511 P.2d 609 (1973); Cal.Penal Code, § 871.

(15) Neither proceeding is similar to a grand jury investigation. *Rodríguez–Aponte,* 116 P.R.Dec. 653; *Press–Enterprise II,* 478 U.S. 1, 106 S.Ct. 2735.

(16) Both are statutory in nature. Rule 23 established the proceeding in 1964; the original California statute was adopted in 1851.

There is no substantial difference between the Puerto Rico and California preliminary hearings with respect to basic scope or purpose, importance of the proceeding within the judicial setting, or legal context within the criminal process. Distinguishing these two proceedings is an attempt to distinguish the "indistinguishable." *Chardón v. Fernández,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981).

Finally, the hearings to which Rivera-Puig sought access were highly charged with public interest. Thus, the " 'community therapeutic value' of openness," *Press–Enterprise II,* 478 U.S. at 13, 106 S.Ct. at 2742 (quoting *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 570, 100 S.Ct. 2814, 2824, 65 L.Ed.2d 973 (1980)), helps to " 'safeguard against the corrupt or overzealous prosecutor and against the compliant, biased or eccentric judge,' " *id.* 478 U.S. at 12–13, 106 S.Ct. at 2742 (quoting *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968)), thus giving the " 'appearance of fairness so essential to public confidence in the system.' " *Id.* 478 U.S. at 13, 106 S.Ct. at 2743 (quoting *Press–Enterprise I,* 464 U.S. at

508, 104 S.Ct. at 823). Thus, public access to preliminary hearings as they are conducted in Puerto Rico will play a particularly significant role in the actual functioning of the process.

## VI. CONCLUSION

We conclude that the qualified First Amendment right of access to criminal proceedings applies to preliminary hearings in Puerto Rico as they are conducted under Rule 23(c). We thus *affirm* the judgment of the district court declaring unconstitutional the provisions of that rule.

We remand this case to the district court to take such actions as are necessary to achieve compliance with this judgment "with all deliberate speed." *Cf. Brown v. Board of Education,* 349 U.S. 294, 301, 75 S.Ct. 753, 757, 99 L.Ed. 1083 (1955). If required by the circumstances, the district court shall issue injunctive relief. *See Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 734–37, 100 S.Ct. 1967, 1975–77, 64 L.Ed.2d 641 (1980).

The judgment of the district court is *affirmed* and the case is *remanded* for action consistent with this opinion. Costs are granted to appellee.

*Affirmed and remanded.*